SO ORDERED.

SIGNED this 21 day of November,
2013.

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WILMINGTON DIVISION

IN RE:

THOMAS CLAYTON BALLARD,                    CHAPTER 11
ELIZABETH DAIL BALLARD,                    CASE NO. 13-03948-8-RDD

      DEBTORS

## ORDER DENYING CONFIRMATION OF
## CHAPTER 11 PLAN OF REORGANIZATION

Pending before the Court is the Chapter 11 Plan of Reorganization filed by Thomas Clayton Ballard and Elizabeth Dail Ballard (the "Debtors") on September 23, 2013 (the "Plan") and the Disclosure Statement filed by the Debtors on September 23, 2013 (the "Disclosure Statement"), the Objection to Disclosure Statement and Objection to Confirmation of Plan of Reorganization filed by RREF II BB Acquisitions, LLC on November 7, 2013, and the Objection to Confirmation of Plan and Approval of Amended Disclosure Statement filed by the Bankruptcy Administrator on November 7, 2013 (the "BA's Objection"). The Court conducted a hearing on the Plan and Disclosure Statement on November 7, 2013 in Greenville, North Carolina.

## BACKGROUND

On June 24, 2013, the Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors are individuals that reside in Wilmington, North

Carolina. Mr. Ballard is employed as an architect. Mrs. Ballard is employed as a retreat director with the United Methodist Camp and Retreat Ministries, Inc. The Debtors also derive income from rental properties. The Plan proposes a reorganization of the Debtors' assets, restructuring of certain secured debts, and a dividend to unsecured creditors. The Debtors intend to fund the Plan through their continued employment and continued operations of their rental property business.

RREF II BB Acquisitions, LLC ("RREF") is the holder of three notes on which the Debtors are obligors, as evidenced by Claim Nos. 23 and 24. Two of the notes are secured by real property located at 2210 N. 2nd Street, Wilmington, North Carolina (the "Second Street Property"). (See Claim No. 24.) The combined balance of the notes secured by the Second Street Property as of the petition date was $867,719.25. The third note is secured by real property located at 59 Darlington Avenue, Wilmington, North Carolina (the "Darlington Avenue Property"). (See Claim No. 23.) The outstanding balance on the Darlington Avenue Note as of the petition date was $209,804.73.

The Debtors' proposed treatment of RREF's claims is set forth in Class 12 of the Plan. Pursuant to the Plan, the Debtors propose to surrender the Darlington Avenue Property to RREF, with a credit against the Note secured by that property in the amount of $125,000.00, and the balance to be treated as a general unsecured claim. RREF does not object to the treatment of this portion of its claim. (See Claim No. 23.) Pursuant to the modified Plan presented at the hearing, the Debtors offered to treat RREF's claim secured by the Second Street Property (Claim No. 24) as fully secured in the amount of $867,719.25, payable with interest at 4.8% amortized over twenty (20) years, with a seven (7) year balloon. Also, as part of the modified Plan proposed at the hearing, the Debtors propose to pay down the debt by giving RREF insurance proceeds in the amount of $308,802.40. These insurance proceeds were made payable to the Debtors, Ballard Holdings Corportation, and

RREF because the Second Street Property sustained severe damage to the building and parking lot as a result of construction of a Marriott Hotel next door.

RREF objects to the modified treatment of its claim secured by the Second Street Property. RREF argues that its treatment is being proposed in bad faith and is not fair and equitable within the meaning of 11 U.S.C. § 1129(b). RREF asserts that even if the $308,802.40 in insurance proceeds is used to pay down the debt, RREF is still left with damaged collateral. The sink hole and other damage to the Second Street Property significantly impacts the value of RREF's collateral. RREF stated that at the § 341 meeting, Mr. Ballard testified that he estimated the damage to the Second Street Property to be $700,000.00 to $800,000.00 and estimated the property value "as damaged" to be $500,000.00. RREF further argues that the property damage could impact the ability of the Debtors to do business on the Second Street Property. Further, RREF asserts that, considering the significant damage to the property, an interest rate of 4.8% amortized over twenty (20) years and with a seven (7) year balloon is not fair and equitable.

RREF further objects to the Debtor's Disclosure Statement as it does not contain adequate information as required by 11 U.S.C. § 1125(b) of the Bankruptcy Code. Specifically, the Disclosure Statement does not fully describe the damage to the Second Street Property, the needed repairs, or how the repairs will be funded. The Disclosure Statement does not describe how the damage is impacting the tenants in the Second Street property, and therefore, how the damage could impact the Debtors' rental income. The Disclosure Statement does not disclose the terms of the leases for the Second Street Property.

At the hearing, Mr. Ballard testified that he is an architect with thirty (30) years of experience practicing architecture. He is also currently employed by a licensed general contractor in Wilmington, North Carolina. Mr. Ballard further testified he has personally renovated the building

on the Second Street Property twice in the last twenty years. Mr. Ballard stated that the repairs that need to be done to the building will require "mostly labor." Mr. Ballard further stated that his intent is to patch the cracks in the masonry of the building and pour concrete to support the eroding foundation. Mr. Ballard testified that he agrees with the "professional engineer's report" regarding the nature and extent of the *damage*. However, it is Mr. Ballard's opinion that the extensive *repairs,* including installation of helical piers*,* proposed by the professional engineer in "Andrew's Report" are not necessary. Mr. Ballard said that he does not intend to repair the property to a "like new" condition because, within the next five (5) to ten (10) years, the property value will far exceed the value of the building. At that time, Mr. Ballard intends to sell the property. Mr. Ballard states that although his sources of income are limited, he will be able to make the repairs because the materials needed are inexpensive and he will be using his own labor.

Because the Court finds that the treatment of RREF is not fair and equitable, the Court need not address the remaining objections to the Plan advanced by the Bankruptcy Administrator.

## DISCUSSION

A plan must be "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). Section 1129(b)(2) sets forth the standards a plan must meet to be considered "fair and equitable." *In re EFH Grove Tower Assocs.*, 105 B.R. 310, 313 (Bankr. E.D.N.C. 1989). However, these requirements are not exclusive. *Id.* Even if a plan meets the standards of 11 U.S.C. § 1129(b)(2), it can still be considered not "fair and equitable" and, therefore, nonconfirmable. *Id.* (citing *Matter of D&F Construction Co.*, 865 F.2d 673, 675 (5th Cir. 1989); *In re Cheatham*, 78 B.R. 104 (Bankr. E.D.N.C. 1987), *aff'd* 91 B.R. 377 (E.D.N.C. 1988)). For a plan to be "fair and equitable," the "plan must literally be fair and equitable." *Id.*

The Debtors' proposed treatment of RREF's claim secured by the Second Street Property is not fair and equitable pursuant to 11 U.S.C. § 1129(b). Considering the significant damage to RREF's collateral securing the debt of the Debtors, an interest rate of 4.8% amortized over twenty (20) years with a seven (7) year balloon does not meet confirmation requirements. The repairs Mr. Ballard proposes to make to the Second Street Property need to be more specific and well defined, including a guarantee as to the time frame within which the repairs will be made. The insurance proceeds check is drawn to Debtors, Ballard Holdings Corporation, and RREF and is subject to input from RREF on repairs or application of the funds to the debt. Further, the Court finds that Mr. Ballard's estimated cost of doing the repairs himself for $4,000.00 is too low when compared to the approximately $300,000.00 estimate given in the "professional engineer's report." If the damage to the building is actually limited to $4,000.00, the Debtors should have made an effort to make those repairs in the two (2) years since the damage occurred.

The Court finds that the Debtors have proved by a preponderance of evidence that the Plan as proposed would be feasible. However, based on the forgoing, the Court finds that the Plan is not fair and equitable with respect to treatment of RREF's claim secured by the Second Street Property.

Accordingly, the Court holds that the Plan does not satisfy the requirements of § 1129. Therefore, confirmation of the Plan is **DENIED**. The Debtor may file an amended plan and amended disclosure statement.

**SO ORDERED.**

**END OF DOCUMENT**

5